THE STATE *v.* BORROUM et al., 23 Miss. Rep., 477.

## UNLAWFUL TRADING WITH SLAVES.

The court is presumed to know the ordinary meaning of words, and is to construe them, when used in pleading, according to that sense.

Where the indictment states that the accused bought "seventy-five pounds of

cotton" from a slave, the offense is as sufficiently charged as if it contained the additional averment that the same was a " product or commodity."

Error to Lafayette circuit court.   MILLER, J.

The opinion of the court and the briefs of counsel contain a sufficient statement of the facts of the case.

*J. W. Thompson* for the state.

The bill of indictment charges that defendant, Wesley Bruce, bought of a slave seventy-five pounds of cotton, without the authority of the master, &c., in writing.   See Acts, December, 1850, p. 100, § 1.   The district attorney, in framing the bill of indictment, uses the word " cotton" (not in the statute), instead of the term " produce" or " commodity," and it is insisted for this reason, the bill of indictment is not sufficient.   Is not the word " cotton," used in the bill of indictment, equivalent to " produce" or " commodity ?"   If so, this indictment is sufficient.   Arch. Cr. Pl., 52.   It is safest to pursue the words of the statute, though not essential.   The general rule is, to pursue the words of the statute.   But when the pleader departs from the general rule, he must be careful to keep within the true and well known limits of the exceptions to such general rule.   Where a statute declares the doing of certain acts for and with a certain intent and purpose, as in the case of " clipping," " rounding," or filing the coin of the realm (5 Eliz., ch. 11, § 2), the intent must be specially alleged ; but where a statute declares that the stealing of a certain thing or of certain things, by name, shall be felony, the judges would not enlarge the circle of crime by including things not named by any construction whatever, but adhered to the very words and letter of the statute ; as in the case of 2 and 3 Edw. 6, ch. 33, where only " horse," " gelding," and " mare," were named, the judges, under this statute, would not extend the meanings by any, the very least intendment, so as to embrace any other subject matter of larceny beyond what is expressed by the very words of the statute.   This strictness, it is well known, was always observed *in favorem vitæ*, only in its strictest sense.   The legislative power only could rightfully say what should, and what should not be a crime.   But such is not the question here.   Our statute of 1850, p. 100, § 1, makes the purchase of any produce or commodity from a slave a misde-

meanor, not a felony; and the only question is, whether the subject matter (cotton) of this offense is sufficiently described. The sale of any "commodity" to a slave, without authority, etc., is an offense. Cotton is a "commodity;" therefore, the sale of cotton to a slave without authority, etc., is an offense. "Commodity" and cotton are equivalent terms, or cotton is contained within and embraced by the term "commodity." The bill of indictment in all other respects is good. Great strictness was intended to be dispensed with. See second section of same statute, p. 101.

This statute is unlike the statute against the exhibition of deadly weapons. In reference to the exhibition of deadly weapons, if the instrument charged to have been exhibited be not one of those enumerated in the statute, it must be shown by suitable averments wherein it was deadly. Not so of "produce," or "commodity." A gun, for instance, is not a deadly weapon without being loaded with gunpowder and ball, while cotton is a commodity in any condition, and needs no averment to show or convey the idea that it is a "commodity." So of the word or term "produce." It is believed that the bill of indictment in this cause was perfectly drawn, and that the rule of criminal pleading here should not be more strict than the English rule; and surely the rule in England is, that if you do use a word not in the statute, the word must be of similar import, or be equivalent to or embraced in the word used in the statute. In dropping the word here used in the statute, one is adopted in its stead that most clearly is equivalent to it or legitimately embraced by it; and if this is so, the bill of indictment may be upheld by the principles of that rule just quoted, which is of the strictest class.

*D. C. Glenn*, attorney general,

Cited the following authorities: State v. Noel, 5 Blackf., 548; Peek v. State, 2 Humph., 78; State v. Foster, 3 McCord, 442; United States v. Bachelder, 9 Gall., 15; State v. Hickman, 2 Hals., 299; State v. Little, 1 Verm., 331; United States v. Gooding, 12 Wheat., 460.

*H. A. Barr* for defendants in error.

The indictment set out in the replication to which the demur-

rer was sustained, does not charge Bruce with any misdemeanor or crime known to the laws of this state.

The act of 1850 makes "the buying, selling, or receiving from a slave without permission, etc., any corn, fodder, hay, meal, spirituous liquors, or other produce or commodity," a high misdemeanor. Acts of 1850, p. 100. The word cotton is not embraced in the act. And it is not alleged in the indictment that cotton is a product or commodity. The court must know judicially from an inspection of the indictment that an offense is charged. Most of us in this country know, as a matter of fact, that cotton is a product and a commodity. But a court cannot draw upon its knowledge of facts to ascertain that cotton is a product or commodity. No court knows judicially that cotton is a product or commodity; for there is no law declaring it either a product or commodity. It was, therefore, necessary that the indictment should allege that cotton is a product or commodity. If the indictment had alleged that cotton is a product or commodity, the court would know it judicially, and could pronounce that a misdemeanor had been charged against Bruce; because the charge would be within what the law pronounces a misdemeanor.

Hence, it is necessary not only to set forth all the circumstances which constitute the statutable definition of the offense, but also to use the precise and technical language of the statute. 1 Chitty's Crim. Law, 286; Anthony v. State, 13 S. & M., 264.

Not even the fullest description of the offense, were it even in the terms of a legal definition, would be sufficient; the very expressions of the statute must be used. Chitty's Crim. Law, 282.

An indictment charging a party with making an assault, etc., with a drawn knife, with intent to kill, etc., was held insufficient. The court says it should be alleged that the knife was a deadly weapon; that all the circumstances which made up the statutable definition of the offense should be set forth, and that the precise and technical language of the statute must be pursued. Ainsworth v. State, 5 How., 245.

*J. F. Cushman* for defendants in error.

The court below quashed the bill of indictment, because there was not a sufficient description of the article alleged to have been

sold by the negro to Bruce, the real defendant. The charge in the bill of indictment, that the defendant purchased cotton of the negro, when cotton is not mentioned in the statute, cannot be considered as equal or equivalent to produce or commodity, unless the court knows, in a judicial manner, that cotton is a commodity or produce. It is a well established principle of law, "That the facts of the case necessary to make it appear judicially to the court that the indictors have gone upon sufficient premises, should be set forth; but there should be no unnecessary matter, or any thing which on its face makes the indictment repugnant, inconsistent or absurd." See 1 Bouv. Law Dict., p. 670. The same certainty is required in an indictment for goods, as in trespass for goods, and rather more certainty, for what will be a defect of certainty in a count, will be much more defective in an indictment. 2 Hale's P. C., 183; 2 Strange R., 1226; 2 Ashmead's R., 105.

The act of 1850, not having specified cotton as one of the articles that negroes were prohibited from selling without special permission, unless cotton is averred in the indictment to be a product or commodity, this court has no more right to know that such article is a commodity or product than it has to know any other fact in the case, unless it is proven by the record. The act under which this indictment was found is a very penal statute, and must be construed strictly, as all penal statutes are by the courts. It is not the province of the courts to enlarge the circle by including things not named in the statute. I apprehend the judgment of the court below was correct.

YERGER, J.:

An indictment was found in the circuit court of La Fayette county against Wesley Bruce, under the 1st section of the act of 6th March, 1850, for suppression of trade and barter with slaves. The words of that section are: "Any person or persons who shall buy, sell or receive of, to or from any slave or slaves, any corn, fodder, hay, meal, spirituous liquors, or other produce or commodity whatsoever," etc. The indictment charged that Bruce did "buy and receive of, and from, etc., seventy-five pounds of cotton," etc. Bruce gave a recognizance with the de-

fendants in error as his sureties for his appearance. He forfeited the recognizance, and a *scire facias* was issued to the defendants to appear and show cause, etc. They pleaded to the *scire facias* that Bruce had never been charged with any crime or misdemeanor by indictment, information, or presentment of a grand jury, at or before the issuance of the writ, etc. To this plea the district attorney replied setting out the indictment. The counsel for defendants in error demurred to the replication upon the ground that the indictment charging a purchase of cotton was not sufficient, it not being named in the statute. The circuit judge sustained the demurrer, from which the state has brought a writ of error. It will be seen that the statute names specifically certain articles, and then uses the general language, " any produce or commodity whatever." Is cotton a product or commodity? If so, it is certainly within the language. But it is said it should have been described in the indictment as a " product or commodity." If it were so in fact, it was embraced by the statute, and the court could know judicially whether the general words used in the act embraced the specific article named in the indictment or not. The court is presumed to know the ordinary meaning of words, and is to construe them when used in pleading according to that sense; and hence we conclude, that when the indictment stated that " seventy-five pounds of cotton" were purchased, the offense was as sufficiently charged as if it had contained the additional averment that the same " was a product or commodity;" because that averment would not have rendered any more certain and definite the nature of the offense, than the language used had already done.

Judgment reversed, and cause remanded for further proceedings.